**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Lawrence Heath,<br><br>        Plaintiff,<br><br>vs.<br><br>Maricopa County; Joseph Arpaio; Ava Arpaio; Dr. Brett Beloud,<br><br>        Defendants. | No. CV 05-1362-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. #20).

**Factual Background**

On April 30, 2003, Plaintiff was incarcerated in the Maricopa County Madison Street jail on charges of child molestation. Plaintiff was put through the jail's booking process, which includes a classification system. During booking, plaintiff was given the option of being placed in administrative segregation. Plaintiff declined administrative segregation and signed a form refusing administrative segregation.

On May 19, 2003, Plaintiff was severely beaten by other inmates. Upon learning of the assault, an officer called for medical assistance and Plaintiff was taken to the medical clinic. Plaintiff was then transported to the emergency room at Good Samaritan Hospital. On May 20, 2003, Plaintiff was transferred to Maricopa Medical Center. On May 28, 2003, Plaintiff was discharged from the Maricopa Medical Center.

**Complaint**

In his Complaint, Plaintiff alleges three causes of action, each containing various sub-parts. The Claims are as follows:

Claim 1, against Maricopa County:

    A.    Failure to protect an inmate by failing to have a proper inmate classification system for inmates accused of child sex offenses.

    B.    Failure to sufficiently train on inmate classification resulting in a failure to properly classify, which resulted in a failure to protect.

    C.    Failure to train on treatment of an ill inmate by medical staff resulting in treatment that rises to the level of cruel and unusual punishment (torture).

Claim 2, against Sheriff Arpaio:[1]

    A.    As the official policymaker, the Sheriff knew of attacks on inmates charged with child sex offenses, failed to implement a sufficient classification system, and failed to train on inmate classification.

Claim 3, against Dr. Beloud:

    A.    Dr. Beloud knew of the cruel and unusual punishment (torture) inflicted by medical personnel on an ill inmate and did not stop it.

    B.    Dr. Beloud knew there was deliberate indifference to Plaintiff's medical needs and did not correct this problem.

The Court will address the motion for summary judgment in the order presented above, which tracks the way the claims are set forth in the Complaint.

---

[1] The Complaint does not distinguish between the Sheriff in his official capacity versus his individual capacity and at the summary judgment stage the parties dispute whether the Sheriff was sued in his official capacity only, or in both his official and individual capacities. This distinction will be addressed more fully below.

**Claim 1A (against Maricopa County) - Failure to protect an inmate by failing to have a proper inmate classification system for inmates accused of child sex offenses.**

Maricopa County moves for summary judgment on this claim arguing that, as a matter of law, the inmate classification system is sufficient to protect inmates charged with a child sex offenses. Further, the County notes that in this case, because of concerns about the nature of the charge, Plaintiff was offered the option of being placed in administrative segregation and waived such placement. Thus, the County argues that there is no nexus between Plaintiff's injuries and the classification system because Plaintiff could have been administratively segregated regardless of the system.

Plaintiff responds and makes the following assertions: 1. the county has a duty to protect inmates (which defendants do not dispute), 2. that there are two paths to municipal liability, one of which is a constitutionally violative policy, practice or custom (which defendants do not dispute), 3. that Sheriff Arpaio is a final policymaker for purposes of municiple liability under Section 1983 (which defendants do not dispute), and 4. that Sheriff Arpaio is not entitled to qualified immunity (which defendants did not move for). Thus, much of Plaintiff's response is a generic discussion of the law that is not tailored to the issues in this case. However, on page 7, Plaintiff (in the context of refuting qualified immunity for Sherriff Arpaio) discusses the administrative segregation issue.

Before turning to the classification system, however, the Court will address Sheriff Arpaio in his official capacity and how, if at all, that "entity" differs from the "entity" of Maricopa County. Plaintiff relies on *Wilson v. Maricopa County*, 463 F.Supp.2d 987, 990-91 (D.Ariz. 2006) for the proposition that Sheriff Arpaio is the official final policymaker for purposes of municipal liability for events occurring at the Madison Street jail. (Doc. #35 at 6). Defendants do not dispute this conclusion. However, *Wilson*'s analysis extends beyond just the conclusion of who is the final policymaker.

Specifically, *Wilson* states, "Municipal liability under § 1983 can result from the unconstitutional actions or omissions of the municipality's final policymaker. ... The parties do not dispute that Sheriff Arpaio has final policymaking authority under Arizona law with

- 3 -

1 respect to the operation of County jails. ... The Court will therefore focus on <u>Sheriff Arpaio</u>
2 in deciding whether Plaintiff's claim against <u>the County</u> survives summary judgment." 463
3 F.Supp.2d at 990-91 (emphasis added).  In an unpublished decision in the same case, the
4 District Court held that the Maricopa County Sheriff's Office is not an entity that can sue and
5 be sued. *See Wilson v. Maricopa County*, 2005 WL 3054051, *2-*3 (D. Ariz. 2005); *see also*
6 *Agster v. Maricopa County, et al.,* CV 02-1686-PHX-JAT (March 3, 2005) (declining to
7 dismiss the Maricopa County Sheriff's Office, but (*Agster v. Maricopa County*, CV 02-1686-
8 PHX-JAT (Verdict, March 24, 2006)) treating the Maricopa County Sheriff's Office and
9 Sheriff Arpaio in his official capacity as a single "entity" for trial.)

10       In this case, in analyzing the evidence presented on summary judgment, the issue is
11 whether different actions and policies should be considered in determining whether there is
12 liability again Maricopa County versus Sheriff Arpaio in his official capacity.  In their
13 Motion, on the classification system, Defendants speak only of the policies of "the Maricopa
14 County Sheriff's Office" as if that is the "entity" against whom liability is being assessed.
15 *See* Doc. #20 at 5-7.  However, as discussed above, the Maricopa County Sheriff's Office has
16 been held to not be a jural entity that can sue and be sued and is not a party to this case.
17 Therefore, the Court again must consider, whose actions are relevant.

18       In his response, Plaintiff only relies on the actions of Sheriff Arpaio to attempt to
19 establish liability for Maricopa County.  Doc. #35 at 6-7.  This approach is consistent with
20 *Wilson* which stated that the Court would look to the actions of the Sheriff to determine
21 liability for the County, seemingly treating the Sheriff and the County as a single acting
22 entity.  However, the forms of verdict sent to the jury in the *Wilson* case clearly treated
23 Sheriff Arpaio in his official capacity as a separate entity from Maricopa County.  CV 04-
24 2873-PHX-DCG (Verdict, May 11, 2007).  Similarly, in *Agster*, the form of verdict treated
25 Sheriff Arpaio in his official capacity as the same entity as the Maricopa County Sheriff's
26 Office, but as a separate entity from Maricopa County. CV 02-1686-PHX-JAT (Verdict,
27 March 24, 2006).

28

The Court again returns to this case to evaluate the "evidence" against Maricopa County on the inmate classification system. In sum, there is no evidence against Maricopa County beyond the evidence against Sheriff Arpaio in his official capacity as a final policymaker. The parties do not dispute that a final policymaker's actions can give rise to municipal liability.[2] Thus, like the summary judgment order in *Wilson*, this Court will address Sheriff Arpaio in his official capacity and Maricopa County as a single entity because the Sheriff's actions are the only alleged as a basis for liability in this case.

In his response, Plaintiff basically argues that Sheriff Arpaio knew that the inmate classification system allowed inmates charged with child molestation to be placed in general population and Sheriff Arpaio also knew that inmates with this charge faced an increased risk of violent physical assault. In their motion, Defendants did not raise lack of knowledge of these two facts as a defense. Instead, in the motion, Defendants offer evidence that an inmate classification system is in place, that the system identifies inmates charged with child sex offenses, and that the classification system, in some cases, results in that inmate being placed in administrative/protective segregation from the general population. Plaintiff does not dispute this evidence, but in essence is arguing that any classification system which allows an inmate charged with a child sex offense to be placed in general population is insufficient to satisfy the Defendant's duty to protect.[3] In their reply, Defendants argue that a the jail has

---

[2] *See e.g. Wilson*, 463 F.Supp.2d at 990 ("Municipal liability under § 1983 can result from the unconstitutional actions or omissions of the municipality's final policymaker. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality's policy or custom that inflicts a constitutional injury may subject the municipality to § 1983 liability whether the policy or custom was 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy'); *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989) (holding that the failure of a municipality's policymakers to ensure adequate police training may serve as the basis for § 1983 liability).").

[3] Defendants do not dispute that they have a constitutional duty to protect an inmate from other inmates. *See e.g. Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) ("'[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.' ' *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v.*

- 5 -

1 classification system that allows inmates with sensitive charges to be segregated from the
2 general population and that such classification system is sufficient to meet the constitutional
3 duty to protect.

4 Thus, the facts about how the classification system works, and specifically that
5 Plaintiff was identified as an inmate with sensitive charges, are undisputed. Further, the
6 result, that Plaintiff was placed in general population, is also undisputed. The question, then,
7 is whether a classification system that ever permits an inmate with a child sex offense charge
8 to be placed in general population is, as a matter of law, inadequate to meet the duty to
9 protect. The Court holds that the result of allowing an inmate with such a charge to be placed
10 in general population does not, as a matter of law, equate to a deliberate indifference to the
11 duty to protect. Accordingly, Defendants motion for summary judgment on this claim will
12 be granted.

13 Moreover, to prevail on this claim, Plaintiff must show the constitutionally violative
14 policy, practice or custom directly caused the injury suffered by Plaintiff. *Nadell v. Las*
15 *Vegas Metropolitan Police Dept.*, 268 F.3d 924, 929-30 (9th Cir. 2001). In this case, it is
16 undisputed that Plaintiff was offered the opportunity to be voluntarily placed in
17 administrative segregation and declined such a placement. Plaintiff signed a written waiver
18 declining this placement. Thus, even if the classification system as a whole was deficient, in
19 this case, Plaintiff was offered the exact result he claims the classification system should
20 have provided, namely administrative segregation. Thus, Plaintiff cannot show the required

21

22

23 *Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.1988)). The failure of prison officials to
24 protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the
25 prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference. *Farmer*, 511 U.S. at 834 (internal quotations omitted). '[D]eliberate indifference entails
26 something more than mere negligence ... [but] is satisfied by something less than acts or
27 omissions for the very purpose of causing harm or with knowledge that harm will result.' *Id.* at 835.")
28

- 6 -

nexus between the classification system and his placement in general population because he personally waived the opportunity to go to administrative segregation.

Plaintiff argues that this waiver does not make the classification system adequate because there is a disputed issue of fact about whether Plaintiff's waiver of administrative segregation was knowing and voluntary. Plaintiff argues that his waiver must be knowing and voluntary because he is waiving a "constitutional right." Defendants reply and argue that classification and placement are not constitutional rights. Defendants are correct; classification does not itself create a constitutional right. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). Therefore, even if the classification system was inadequate, Plaintiff's written waiver of placement in administrative segregation was the "moving force" causing Plaintiff to not be placed in administrative segregation. *See Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004).

**Claim 1B (against Maricopa County) - Failure to sufficiently train on inmate classification resulting in a failure to properly classify, which resulted in a failure to protect.**

Similar to the failure to properly classify claim, Defendants offer evidence of the training provided on how to classify inmates during booking.[4] Plaintiff again does not dispute this evidence, or even address training specifically. Thus, the evidence on the training provided on classification is undisputed. In his response, Plaintiff relies on the same theories advanced above, which would be that training on classification must be inadequate if such training allows a classification which would permit an inmate charged with a child sex offense to ever be placed in general population. The Court has already addressed this argument above and concluded that the Court will not say, as a matter of law, that any training and/or classification system that permits an inmate with a child sex offense charge to be placed in general population is a violation of the duty to protect. Therefore, the Court will grant Defendants' motion for summary judgment on this theory.

---

[4] For purposes of this argument, Defendants abandon reference to the Maricopa County Sheriff's office, but use Maricopa County and Sheriff Arpaio interchangeably. Doc. #20 at 7-8.

**Claim 1C (against Maricopa County) - Failure to train on treatment of an ill inmate by medical staff resulting in treatment that rises to the level of cruel and unusual punishment.**

Plaintiff's theory, from the Complaint, on this claim is, "failure to train its employees in constitutionally adequate practices and procedures required to protect inmate patients from violations of their rights to be free from cruel and unusual punishment reflects a deliberate or conscious' choice by the MCSO and therefore constitutes a policy which may subject them to liability under Section 1983." Complaint at 7. Defendants' motion for summary judgment on failure to train, as it relates to Maricopa County, discusses and presents evidence on the training on the inmate classification system. Accordingly, the Court finds that Defendants have not moved for summary judgment on this claim. Therefore, Plaintiff's claim that he was subjected to "torture" by the nursing staff (due to inadequate training) while he was a patient at the Maricopa Medical Center will proceed to trial. *See* Complaint at 5.

The Court notes that as part of the deliberate indifference to medical needs section of the motion for summary judgment (Doc. #20, "Deliberate Indifference to Medical Needs" page 11), Defendants include a conclusory sentence that says, "The medical care of Plaintiff met the standard of care, and there is no evidence that there was <u>willful infliction of emotional or physical distress by the medical staff or Maricopa Medical Center or by Dr. Beloud</u>." Doc. #35 at 12 (emphasis added).

The Court finds that "torture" as the Plaintiff claims he experienced, goes beyond Plaintiff's claim of deliberate indifference to medical needs.[5] Specifically, this claim is that,

---

[5] *See e.g. Grant v. Foye*, 1992 WL 371312, *1 (9th Cir. 1992) (unpublished disposition) ("Such acts amount to wanton infliction of psychological torture redressable under 42 U.S.C. § 1983 . *See Cooper v. Dupnik*, 963 F.2d 1220, 1248-50 (9th Cir.) (en banc) ('sophisticated psychological torture' actionable under section 1983 ), cert. denied , 113 S.Ct. 407 (1992); *see also Northington v. Jackson*, 973 F.2d 1518, 1522-24 (10th Cir.1992) (reversing dismissal of section 1983 action where state actor 'put a revolver to [plaintiff's] head without identifying himself as a corrections officer, [and] threatened to kill him'); *Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir.1986) (reversing dismissal where state prisoner alleged that a corrections officer 'pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death'").

"during his treatment at MMC following the assault, [Plaintiff] was physically and emotionally tortured by MMC nursing staff who repeatedly subjected him to physical and verbal abuse - - inflicting extreme pain and emotional distress - - solely on the basis that he was in custody charged with child molestation." Complaint at 5. Accordingly, the Court finds that the conclusory sentence in the deliberate indifference section of the summary judgment motion is insufficient to move for summary judgment on the "torture" claim.

**Claim 2A (against Sheriff Arpaio) - As the official policymaker, the Sheriff knew of attacks on inmates charged with child sex offenses, failed to implement a sufficient classification system, and failed to train on inmate classification.**

With respect to the Sheriff in his official capacity as the official policymaker, as discussed above, the Sheriff's actions and the "actions" of Maricopa County are the same "actions." Therefore, for the reasons addressed above that Maricopa County is entitled to summary judgment on the classification system and training on the classification system, Sheriff Arpaio in his official capacity is also entitled to summary judgment on these claims.

With respect to Sheriff Arpaio in his individual capacity, Defendants argue (in the reply) that on the face of the complaint, no claim was made against Sheriff Arpaio in his individual capacity, therefore, no claim on this theory should be allowed to proceed. The complaint states:

> "Defendant Arpaio was personally aware of a series of violent assaults committed by general population inmates on other inmates in the Maricopa County jail who were being prosecuted on child sex charges. In spite of this knowledge Defendant Arpaio failed to modify the MCSO classification policy which allowed inmates charged with child sex crimes to be housed with general population inmates. In addition, Defendant Arpaio failed to establish and maintain training for MCSO employees in constitutionally adequate practices and procedures required to protect inmates from violent assaults."

Complaint at 8.

Under Section 1983, a supervisor is personally liable if he or she caused a constitutional deprivation. *Chew v. Gates*, 27 F.3d 1432, 1446 (9th Cir. 1994). Specifically, Plaintiff must show, "1) [the supervisor's] personal involvement in the constitutional deprivation, or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redmond v. County of San Diego*, 942 F.2d 1435, 1446 (9th

Cir. 1991) (citations omitted). Conversely, supervisors cannot be held liable on any theory of vicarious liability under Section 1983. *Hansen v. Black*, 885 F.2d 642 645-46 (9th Cir. 1989). Therefore, supervisors are only potentially liable for their individual actions. *Id.*

First, because the Complaint alleges personal knowledge and involvement by Sheriff Arpaio as a supervisor, the Court cannot say the Complaint cannot be read to include a claim against the Sheriff in his individual capacity. Second, although Plaintiff spends much time attempting to establish why the Sheriff is not entitled to qualified immunity, the Court finds that Defendants have not moved for summary judgment based on qualified immunity.

Third, on the merits, in their reply, Defendants argue that liability cannot be established against Sheriff Arpaio in his individual capacity because Plaintiff has no evidence that Sheriff Arpaio took direct action that lead to the alleged deprivation of Plaintiff's rights. The Court agrees. Plaintiff cites to only a newspaper article wherein the Sheriff acknowledged that there are risks of violent assaults when inmates charges with child sex crimes are placed in general population.[6] This evidence does not show that the Sheriff, in his individual capacity, was personally involved with Plaintiff's alleged deprivation.

For example, there is no allegation that the Sheriff participated or personally oversaw Plaintiff's intake or classification. There is no allegation that the Sheriff was present at the jail during the events in question. Thus, Plaintiff's evidence does not show personal involvement by a supervisor in Plaintiff's particular incident sufficient to sustain a claim for individual liability on a supervisor liability theory.

Additionally,

> [S]upervisory liability can exist 'even without overt participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself

---

[6] The Court notes that Defendants objected to this evidence as hearsay. The Ninth Circuit Court of Appeals has instructed the district courts that the district court should consider evidence subject to a potential hearsay objection because it is inappropriate to focus on the admissibility of the evidence's form at the summary judgment stage. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The focus at the summary judgment stage in the proceeding is the admissibility of its contents. *Id.* Assuming without deciding that this article is hearsay, based on this case law, the Court will considered the evidence.

is a repudiation of constitutional rights and is the moving force of the constitutional violation.' *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (citations and internal quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

*Logan v. Arizona*, 2006 WL 2927458, *5 (D. Ariz. 2006). As discussed above, there is no nexus between Sheriff Arpaio's allegedly deficient classification policy or his allegedly deficient training policy and Plaintiff's deprivation because Plaintiff was offered the option of being placed in administrative segregation. Therefore, summary judgment will be granted to Sheriff Arpaio in his individual capacity.

**Claim 3A (against Dr. Beloud) - Dr. Beloud knew of the cruel and unusual punishment inflicted by medical personnel on an ill inmate and did not stop it.**

This claim is related to Claim 1C above, which is Plaintiff's allegation that, while he was a patient at the Maricopa Medical Center, he was subjected to cruel and unusual punishment. As discussed above, this claim appears to go beyond just deliberate indifference to medical needs and is that: "during his treatment at MMC following the assault, [Plaintiff] was physically and emotionally tortured by MMC nursing staff who repeatedly subjected him to physical and verbal abuse - - inflicting extreme pain and emotional distress - - solely on the basis that he was in custody charged with child molestation." Complaint at 5.

As discussed above, in the motion for summary judgment, Defendants did not move for summary judgment on this "torture" theory advanced by Plaintiff. However, Defendants note in their reply that Plaintiff fails to mention Dr. Beloud at all in Plaintiff's response to the motion for summary judgment, seemingly abandoning all claims against the doctor. Thus, the Court is faced with a summary judgment record that is silent as to this "torture" claim, and a response from Plaintiff that is silent as to Dr. Beloud. On this record, the Court will not grant summary judgment to Dr. Beloud on this claim because Defendants did not move for summary judgment.

**Claim 3B (against Dr. Beloud) - Dr. Beloud knew there was deliberate indifference to Plaintiff's medical needs and did not correct this problem.**

Defendants move for summary judgment on this claim offering evidence of all of the medical attention and care Plaintiff received and arguing that this evidence shows, as a matter

- 11 -

1 of law, that Dr. Beloud was not deliberately indifferent to Plaintiff's medical needs. Plaintiff
2 fails to respond to this argument or offer any conflicting evidence.

3 The Court has reviewed the evidence presented by Defendants and agrees that
4 Defendants were not deliberately indifferent to Plaintiff's medical needs. Plaintiff received
5 immediate medical attention, including being transported to the emergency room. Plaintiff
6 was monitored daily during his recovery, including receiving pain medication. Therefore,
7 the Court finds that Defendants were not deliberately indifferent to Plaintiff's medical needs
8 as a matter of law and Dr. Beloud is entitled to summary judgment on this claim.

9 **Ava Arpaio**

10 In their reply, for the first time, Defendants argue that Ava Arpaio should be dismissed
11 because she has never been served. The Court will not consider arguments raised for the first
12 time in a reply.

13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #20) is granted in part and denied in part as follows:

**Granted** in favor of Maricopa County on Claim 1A (classification) and Claim 1B (training);

**Granted** in favor of Sheriff Arpaio on all claims (Claim 2A) in both his individual and official capacities (although this adjudicates all claims with respect to Sheriff Arpaio, the Clerk of the Court shall not enter judgment at this time);

**Granted** in favor of Dr. Beloud on Claim 3B (deliberate indifference to medical needs);

**Denied** as to Maricopa County on Claim 1C (training to prevent torture by medical staff); and

**Denied** as to Dr. Beloud on Claim 3A (failure to prevent torture by medical staff).

DATED this 22nd day of May, 2007.

James A. Teilborg
United States District Judge